# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC TODD MCCOY,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:18-cv-1716** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **R.A. PERDUE, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the Court is Defendant J. Rush ("Rush")'s motion to dismiss and/or for summary judgment. (Doc. No. 25.) For the reasons set forth below, the Court will grant the motion.

## I.    BACKGROUND

<u>Pro</u> <u>se</u> Plaintiff Eric Todd McCoy ("Plaintiff"), who is presently confined at the Federal Detention Center in Houston, Texas ("FDC Houston"), initiated the above-captioned action on August 29, 2018 by filing a complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against Defendants R.A. Perdue ("Perdue"), E. Mace-Leibson ("Mace-Leibson"), Rush, and J. Simonson ("Simonson"), concerning events that occurred while Plaintiff was incarcerated at the Federal Prison Camp Schuylkill in Minersville, Pennsylvania ("FPC Schuylkill"). (Doc. No. 1.) Plaintiff alleged that on March 14, 2018, while in FPC Schuylkill's medical examination room, he was assaulted by Defendant Rush, who allegedly squeezed Plaintiff's penis, testicles, and hernia aggressively. (<u>Id.</u> at 4-5.) Plaintiff claimed that he experienced severe pain in his private area and was in a wheelchair for ninety (90) days after this incident. (<u>Id.</u> at 5.) Plaintiff maintained that he was given medication for pain and muscle spasms, as well as a pamphlet regarding stretching exercises, but that he did not see Defendant Mace-Leibson until months later. (<u>Id.</u>) As relief, Plaintiff requested that

Defendants Rush and Mace-Leibson be subject to professional disciplinary action and that he receive $100,000.00 for mail tampering, $400,000.00 for pain and suffering and mental anguish, and $4 million in punitive damages. (Id.)

In a Memorandum and Order dated November 8, 2018, the Court dismissed without prejudice Plaintiff's claims against Defendants Perdue, Mace-Leibson, and Simonson, as well as his due process claims and First Amendment mail tampering claims. (Doc. Nos. 8, 9.) The Court granted Plaintiff thirty (30) days to file an amended complaint and noted that if Plaintiff did not do so, the above-captioned case would be permitted to proceed only as to his Eighth Amendment claims against Defendant Rush. (Doc. Nos. 8, 9.) Plaintiff did not file an amended complaint within the time allotted. Accordingly, in an Order dated March 26, 2019, the Court directed service of his complaint upon Defendant Rush. (Doc. No. 10.)

Defendant Rush filed his motion to dismiss and/or for summary judgment (Doc. No. 25) on October 23, 2019 and his supporting materials on December 18, 2019 (Doc. Nos. 33, 34). On January 21, 2020, observing that Defendant Rush raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1] (Doc. No. 37.) The Court directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion and a statement of material facts responding to Defendant Rush's statement within thirty (30) days. (Id.) More than thirty (30) days have passed and, to date, Plaintiff has filed neither a brief

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

2

in opposition and statement of material facts nor a motion seeking an extension of time to do so. Accordingly, because the time for fling an oppositional brief has expired, Defendant Rush's motion to dismiss and/or for summary judgment is ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to

show the existence of every element essential to its case that it bears the burden of proving at

trial, for "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also

Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the

evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In

doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in

his favor. See id. (citations omitted). However, a party opposing a summary judgment motion

must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a

"statement of the material facts, responding to the numbered paragraphs set forth in the statement

required [to be filed by the movant], as to which it is contended that there exists a genuine issue

to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A

party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ.

No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are

not excused from complying with court orders and the local rules of court"); Thomas v. Norris,

Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se

parties must follow the Federal Rules of Civil Procedure).

C.     **Bivens Action**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards

applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.

1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under

<u>Bivens</u>, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. <u>See</u> <u>Young v. Keohane</u>, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III. DISCUSSION

### A. Statement of Material Facts[2]

#### 1. Facts Regarding Administrative Exhaustion

The Bureau of Prisons ("BOP")'s administrative remedy program allows an inmate to seek formal review of any issue relating to any aspect of confinement. <u>See</u> 28 C.F.R. § 542.10(a). Before seeking formal review, an inmate must first attempt an informal resolution of the matter by presenting his complaint to staff on an Informal Resolution Attempt form, known as a BP-8. <u>See id.</u> § 542.13(a). If the inmate is not successful at achieving an informal resolution, he may seek relief from the Warden by submitting a Request for Administrative Remedy, referred to as a BP-9. <u>See id.</u> § 542.14. If an inmate is not satisfied with the Warden's response, he may file a BP-10, a Regional Administrative Remedy Appeal, with the Regional Director within twenty (20) days of the Warden's response. <u>See id.</u> § 542.15(a). An inmate may

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." <u>See</u> M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. <u>See id.</u> Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. <u>See id.</u> Unless otherwise noted, the background herein is derived from Defendant Rush's Rule 56.1 statement of material facts. (Doc. No. 33.) Plaintiff failed to file a response to Defendant Rush's statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the Court deems the facts set forth by Defendant Rush to be undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; <u>United States v. Alberto</u>, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

then file, within thirty (30) days of the Regional Director's response, a Central Office Administrative Remedy, referred to as a BP-11, with the BOP's Central Counsel.  See id.  An inmate's appeal to the Central Office is the final administrative level of appeal.  See id.

The BOP "maintains computerized indexes of all administrative remedies filed by inmates to verify whether an inmate has exhausted administrative remedies on a particular issue."  (Doc. No. 33 ¶ 1.)  Between March 14, 2018, and August 29, 2018, the date on which Plaintiff initiated the above-captioned case, Plaintiff "filed five administrative remedies, all referenced with Remedy Number 939595, and all pertaining to the topic of 'X-RAY & MRI.'" (Id. ¶ 2.)  Plaintiff's administrative remedy records "contain no entries for administrative remedies about an assault."  (Id. ¶ 3.)  On August 7, 2018, Plaintiff submitted Administrative Remedy 939595-A1 to the BOP's Central Office regarding "the topic of 'X-RAY & MRI.'"  (Id. ¶ 4.)  On September 12, 2018, the Central Office notified Plaintiff that it required an extension of time to respond to Plaintiff's remedy.  (Id. ¶ 5.)  The Central Office responded to that remedy on October 2, 2018.  (Id. ¶ 6.)

## 2. Facts Regarding Plaintiff's Medical Care

On February 8, 2018, Defendant Rush evaluated Plaintiff for complaints of right-side lower back pain with intermittent pain shooting down his right leg.  (Id. ¶ 7.)  Plaintiff indicated that the pain had been aggravated while he was lifting boxes at work three (3) days earlier.  (Id.)  Plaintiff further reported a history of lower back pain that required "bed rest" and a hernia on his right side that "acts up."  (Id. ¶¶ 8-9.)  Defendant Rush placed Plaintiff "on idle status for two days and advised him to rest, perform stretching and range of motion exercises, to apply warm compresses to the affected area[,] and to take over-the-counter pain medications as needed."  (Id. ¶ 10.)  Defendant Rush also noted that Plaintiff "had a right inguinal hernia with a two

centimeter protrusion that was reducible; there was no strangulation or incarceration." (Id. ¶ 11.) He adjusted Plaintiff's medical record to reflect "lifting restrictions due to the hernia." (Id. ¶ 12.)

On March 14, 2018, two (2) staff members carried Plaintiff to Health Services and reported that Plaintiff had been "lying on the ground and stating that he could not move or walk due to the onset of pain in his low[er] back and right leg." (Id. ¶ 13.) Plaintiff demanded to be taken to a hospital. (Id. ¶ 14.) Plaintiff complained that he was experiencing sharp pain in his lower back that radiated into his right lower leg. (Id. ¶ 15.) He indicated that he "tried to walk, but his right leg gave out." (Id.) Plaintiff refused to allow Defendant Rush "to touch him [and] pushed his hand away when he attempted to palpate his lower right side; [Plaintiff] yelled and stated his pain increased before [Defendant] Rush placed his hand on him for the exam." (Id. ¶ 16.) Defendant Rush noted tenderness in Plaintiff's right lumbar spine but that Plaintiff "could move all four extremities, could flex his feet bilaterally[,] and voiced no complaints of paresthesia." (Id. ¶ 17.) He diagnosed lower back pain and unspecified sciatica on the right side and ordered that Plaintiff "remain idle for three days and gave him a Toradol injection before discharging him with a wheelchair and instructions to follow up at sick call the next day." (Id. ¶¶ 17-18.) Defendant Rush noted that Plaintiff initially refused to discharge back to his unit for bed rest with pain control. (Id. ¶ 19.) As a physician assistant, Defendant Rush "did not have authority to send [Plaintiff] to an outside hospital." (Id. ¶ 20.) Defendant Mace-Leibson cosigned the medical record for March 14, 2018. (Id. ¶ 21.) Nurse Practitioner Melissa Swaboski was present when Defendant Rush attempted to examine Plaintiff. (Id. ¶ 22.) She observed that Plaintiff refused to permit Defendant Rush to examine him and never saw Defendant Rush squeeze Plaintiff's testicles or hernia. (Id. ¶¶ 23-24.)

Defendant Rush saw Plaintiff again on March 15, 2018, after noting that Plaintiff had not appeared at sick call as directed. (Id. ¶ 25.) Plaintiff "arrived in a wheelchair, but was able to get out of the wheelchair and walk twenty feet to the exam table with minimal assistance." (Id. ¶ 26.) Plaintiff complained that he was experiencing stabbing pain in his right side that radiated to his right groin and thigh. (Id. ¶ 27.) Defendant Rush noted that Plaintiff "had normal passive range of motion in the lumbar spine, but he had muscle spasms and tenderness on the right with a decreased active range of motion." (Id. ¶ 28.) Plaintiff was able to complete straight leg raises on the right but not the left; "his gait was guarded and he demonstrated normal muscle strength." (Id. ¶ 29.) Defendant Rush prescribed Ibuprofen and Elavil, continued Plaintiff's idle status, provided Plaintiff a bottom bunk pass for two (2) weeks, and directed Plaintiff to return if he did not experience improvement. (Id. ¶ 30.) On March 28, 2018, Defendant Rush noted that Plaintiff had not appeared at sick call with any concerns. (Id. ¶ 31.)

On May 1, 2018, after noting that Plaintiff had made comments about his medical status in a personal email, Defendant Mace-Leibson reviewed Plaintiff's chart and entered into his medical record the contents of his email, which was to a secretary at an outside law firm. (Id. ¶ 32.) That email stated, in part, "I'm straight. My sciatica nerve has eased up but the hernia is there until surgery." (Id.) Defendant Mace-Leibson evaluated Plaintiff that same day after he was brought to Health Services by his counselor. (Id. ¶ 33.) The counselor told Defendant Mace-Leibson that Plaintiff "did not want to see Defendant Rush by himself because he heard [Defendant] Rush discussing that he had viewed his emails." (Id.) Plaintiff complained that Defendant Rush had treated him "inappropriately" and had not sent him to a hospital. (Id. ¶ 34.) Plaintiff also complained that Defendant Rush had "grabbed [his] problem area and squeezed while using profanity." (Id. ¶ 35.) Plaintiff maintained that "all he received was a shot and some

pills, and he asked that his chart be documented to show that he was treated inappropriately and denied medical treatment." (Id. ¶ 36.)

Defendant Mace-Leibson explained to Plaintiff that Defendant Rush had called her at the time of the March 14, 2018 encounter and that she had heard Plaintiff "screaming and being inappropriate" in the background. (Id. ¶ 37.) She asked Plaintiff "what he wanted her to do for him since his back issue was resolved; [Plaintiff] replied that he did not want to be examined and stated, 'I've already documented everything and it is on its way up the food chain.'" (Id. ¶ 38.) Defendant Mace-Leibson noted that Plaintiff "merely disagrees with local treatment which was appropriate." (Id. ¶ 39.) She noted further that on March 14, 2018, Defendant Rush had contacted her by phone "because he wanted to know if an outside hospital was clinically indicated for [Plaintiff's] complaints of low[er] back pain." (Id. ¶ 40.) Based on what Defendant Rush relayed to her, Defendant Mace-Leibson "determined that it was not reasonable to refer [Plaintiff] to an outside hospital." (Id. ¶ 41.) She remembered that Plaintiff "insisted that he be sent to an outside hospital and became verbally aggressive when Defendant Rush did not acquiesce to his demand." (Id. ¶ 42.)

Plaintiff was next seen in Health Services on October 4, 2018, when he saw Physician Assistant Steffan for an unrelated issue. (Id. ¶ 43.) At that time, Plaintiff reported that he had fallen down the stairs after his leg gave out and that he had hit his head, knees, and back. (Id.) Plaintiff also told Steffan that he had "a history of two hernias with pain in the left side." (Id. ¶ 44.) Plaintiff's prison medical record for 2018 "reflects that he never sought treatment for an injury to his penis or testicles and he had no contact with Defendant Rush after March 15, 2018." (Id. ¶ 45.)

**B.     Exhaustion of Administrative Remedies**

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and

timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated <u>pro se</u> petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused.  <u>See</u> <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  <u>See</u> <u>id.</u> at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  <u>See</u> <u>id.</u>  Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use."  <u>See</u> <u>id.</u> Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation."  <u>See</u> <u>id.</u> at 1860.

Here, Defendant Rush argues that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit.  (Doc. No. 34 at 13-15.)  Specifically, Defendant Rush maintains that Plaintiff never filed an administrative remedy concerning the assault that allegedly occurred on March 14, 2018, when Defendant Rush allegedly squeezed Plaintiff's penis, testicles, and hernia.  (<u>Id.</u> at 13.)  He argues further that Plaintiff did not properly exhaust any claims regarding medical treatment because he "filed his lawsuit before the Central Office was required to respond to his Central Office appeal."  (<u>Id.</u>); <u>see also</u> <u>Oriakhi</u>, 165 F. App'x at 993 (concluding that "a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Defendant Rush has submitted a

declaration from Matthew Lavelle, a BOP attorney, and portions of Plaintiff's computerized administrative remedy record to support these arguments. (Doc. No. 33-1 at 3-9.)

Plaintiff has not responded to Defendant Rush's motion and, therefore, has not refuted the defense that he failed to properly exhaust his claims against Defendant Rush. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, Defendant Rush's motion will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against Defendant Rush.

**C.      Merits of Plaintiff's Eighth Amendment Claims**

Although Plaintiff failed to properly exhaust his administrative remedies with respect to his claims against Defendant Rush, Defendant Rush maintains further that summary judgment is appropriate because the record does not establish that he violated Plaintiff's Eighth Amendment rights. The Court, therefore, addresses the merits of Plaintiff's claims below.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (noting that "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."). An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. See id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

1.      **Excessive Force**

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The standard governing the Court's inquiry as to whether a plaintiff has a viable excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Under proper circumstances, a court may determine the issue of whether excessive force was used as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." See Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322). In making this determination, courts are tasked with evaluating the following Whitley factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id. The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, de minimis use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." See Brooks, 204 F.3d at 107 (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (2010) (clarifying that de minimis force, rather than de minimis injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Hudson, 503 U.S. at 9.

In the instant case, Plaintiff alleges that Defendant Rush "physically assaulted [him on March 14, 2018] by plunging both of his hands into [his] private area[,] aggressively squeezing [his] penis, testicles[,] and hernia." (Doc. No. 1 at 5.) Upon consideration of the Whitley factors set forth above, however, the Court concludes that Plaintiff cannot maintain a claim for excessive force against Defendant Rush. The evidence Defendant Rush cites to the Court establishes that on March 14, 2018, Defendant Rush never touched Plaintiff's penis, testicles, and hernia. Instead, Plaintiff pushed Defendant Rush's hand away when Defendant Rush tried to examine his lower back in response to Plaintiff's complaints of pain. (Doc. No. 33 ¶ 16.) Nurse Practitioner Swaboski was present during Defendant Rush's examination of Plaintiff and never saw Defendant Rush assault Plaintiff in any way. (Id. ¶¶ 22-24.) In any event, there is no evidence of record that would support a finding that any force used by Defendant Rush was

malevolent so as to establish an Eighth Amendment violation. See Wilkins, 559 U.S. at 37-38. Thus, the Court will grant summary judgment to Defendant Rush as to Plaintiff's excessive force claim.[3]

### 2.    Denial of Medical Care

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256

---

[3] Although Plaintiff does not specifically describe his claim as a sexual assault claim against Defendant Rush, a liberal reading of Plaintiff's complaint could suggest that he is raising such a claim. See Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) (recognizing that "prison sexual abuse can violate the Constitution"). However, to maintain such a claim, a plaintiff must establish an objectively serious sexual contact. See id. at 478. In the instant case, as discussed supra, there is no evidence before the Court to suggest that Defendant Rush initiated sexual contact with Plaintiff. Accordingly, to the extent Plaintiff's complaint raises an Eighth Amendment sexual assault claim, it is subject to dismissal.

F.3d 120, 133 (3d Cir. 2001) (citing <u>Farmer</u>, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." <u>See</u> <u>id.</u>

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. <u>See</u> <u>id.</u> Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103, 108-10 (3d Cir. 1990); <u>see also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, <u>see</u> <u>Young v. Kazmerski</u>, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See <u>White</u>, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does

not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In the instant case, Defendant Rush does not challenge whether Plaintiff had a serious medical need.  Rather, he asserts that "the medical record supports the conclusion that [he] and other BOP medical practitioners provided [Plaintiff] with reasonable medical treatment and that his claim represents a disagreement about the medical treatment provided to him."  (Doc. No. 34 at 20-21.)  The Court agrees with Defendant Rush.  In his complaint, Plaintiff vaguely suggests that his inguinal hernia was not fixed, he only received medications and a pamphlet of stretching exercises, and did not see Defendant Mace-Leibson until months later.  (Doc. No. 1 at 5.)  The record, however, establishes that on February 8, 2018, Defendant Rush evaluated Plaintiff for lower back pain, placed him on idle status for two (2) days, and "advised him to rest, perform stretching and range of motion exercises, to apply warm compresses to the affected area[,] and to take over-the-counter pain medications as needed."  (Doc. No. 33 ¶¶ 7-10.)  On March 14, 2018, Plaintiff refused to allow Defendant Rush to touch him and pushed Defendant Rush's hand away when Defendant Rush "attempted to palpate his right lower side."  (Id.¶ 16.)  Defendant Rush continued Plaintiff's idle status and provided a Toradol injection.  (Id. ¶ 18.)  The next day, Defendant Rush prescribed Plaintiff Ibuprofen and Elavil, continued his idle status, provided a bottom bunk pass for two (2) weeks, and directed Plaintiff to return if his condition had not

improved.  (Id. ¶ 30.)  On March 28, 2018, Defendant Rush noted that Plaintiff had not reported to sick call with any concerns.  (Id. ¶ 31.)  Plaintiff saw Defendant Mace-Leibson on May 1, 2018, at which time he complained that Defendant Rush denied him treatment by failing to send him to the hospital.  (Id. ¶ 34.)  Defendant Mace-Leibson recalled that on March 14, 2018, Defendant Rush had called her to see if "an outside hospital was clinically indicated for [Plaintiff's] complaints of low back pain."  (Id. ¶ 40.)  Defendant Mace-Leibson decided that it was not reasonable to refer Plaintiff to a hospital.  (Id. ¶ 41.)

Contrary to Plaintiff's suggestions, the record clearly establishes that Defendant Rush provided care to Plaintiff for his pain.  Plaintiff's disagreement with Defendant Rush (and Defendant Mace-Leibson) regarding his medical care does not support a claim of cruel and unusual punishment.  See Farmer, 685 F. Supp. at 1339.  Moreover, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See Estelle, 429 U.S. at 106.  In the instant case, the record does not establish that Defendant Rush knew of Plaintiff's need for medical treatment and intentionally refused to provide it, delayed necessary medical treatment for a non-medical reason, or prevented Plaintiff from receiving needed or recommended medical treatment.  Consequently, the Court will grant Defendant Rush summary judgment as to Plaintiff's Eighth Amendment claim concerning medical care.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Rush's motion to dismiss and/or for summary judgment (Doc. No. 25) will be granted.  An appropriate Order follows.